## Nicholson v. The Louisville, New Albany and Chicago R. W. Co.

PLEADING.—*Railroad.*—*Mortgage Indemnity.*—*Trust and Trustee.*—*Purchaser of Property Encumbered.*—*Action to Enforce Encumbrance.*—The property of a railroad company having been conveyed to a trustee, for the benefit of the holders of a bonded indebtedness of such road, by a trust-deed, or mortgage, providing that he should receive the earnings and pay the running expenses of such road, which road, with all its appurtenances,

having been sold to such bond-holders, to satisfy such indebtedness, was reorganized and run under a new corporate name; whereupon the holder of a judgment which had been obtained against such former company, during the management of such trustee, for killing stock, brought suit against such company to obtain the amount of such judgment, alleging that such trustee had failed to pay the same, but had paid all the earnings of such road, to such bond-holders.

*Held*, on demurrer, the complaint not alleging what amount, if any, of the earnings of such road had ever been received by such trustee, that it is insufficient.

Practice.—*Demurrer.*—*Defect of Parties.*—A demurrer to a complaint, alleging as cause a defect of parties defendants, should point out whom the additional party defendant should be.

From the Montgomery Circuit Court.

Biddle, J.—The complaint is as follows:

"Allen T. Nicholson, plaintiff, complains of the Louisville, New Albany and Chicago Railway Company, defendant, and says, that on the 24th day of March, 1870, by the consideration of the circuit court in and for the county of Montgomery, in the State of Indiana, he recovered a judgment against The New Albany and Salem Railroad Company, for the sum of one hundred and seventy-five dollars, the same being upon a complaint for cattle killed by an engine and cars running on the road of said company, which said judgment is now in full force, wholly unpaid, and not appealed from; that at the time said stock, for the killing of which said judgment was recovered, was run upon and killed by the engine and cars running on said road, the said road was being run and operated by one Charles E. Bill, as alternate trustee under a mortgage, or trust-deed, executed by said railroad company, to one Dow D. Williamson, and his alternate, said Bill, (the said Williamson being dead) to secure the payment of the bonds issued by said company, which said mortgage, or trust-deed, among other things, made it the duty of the said Dow D. Williamson, and said

Bill, to run and superintend said road, and, after first paying the expenses of running and keeping said road in order, out of the earnings of the same, to pay the said bond-holders the interest and principal of their bonds; that the said Charles E. Bill, alternate of Dow D. Williamson, instead of paying for said stock, so killed upon said road, out of the earnings of said road, paid the whole of the earnings of said road to said bond-holders, and left the judgment of plaintiff wholly unpaid; the debt for the killing of said stock being a part of the expenses of running and operating said road, and all such debts having been so regarded and treated by the said Dow D. Williamson, said Charles E. Bill and said bond-holders; that, subsequently to the rendition of said judgment, said New Albany and Salem Railroad was sold, together with a large amount of personal and real property acquired by said New Albany and Salem Railroad Company, after the making and recording of said mortgage, or trust-deed, to the said Dow D. Williamson, and said Bill, his alternate, by order of the United States District Court, for the benefit and upon the application of said bond-holders, they becoming the purchasers thereof for a mere nominal sum; and the said bond-holders now own and operate said road, under the name and style of the Louisville, New Albany and Chicago Railway; the said bond-holders, after having so purchased said road, and succeeded to all the property, rights, franchises and obligations of the said New Albany and Salem Railroad Company, organizing themselves into a new corporation, known as the Louisville, New Albany and Chicago Railway Company, pursuant to the statute of the State of Indiana, in such case made and provided. Wherefore," etc.

To this complaint a demurrer was filed, alleging as grounds:

1st. The insufficiency of the facts stated; and,
2d. A defect of parties defendants.

The demurrer was sustained, exceptions taken, and judgment rendered on the demurrer.

It is enough to say that this complaint does not show, what amount of the earnings of said road came to the hands of the trustee, out of which the debt claimed should have been paid; and whether any such earnings so came to his hands, or whether there ever were any such earnings, is left wholly to inference; there are no such averments, without which, the complaint is insufficient. And in pointing out only these defects, we must not be understood as deciding, or even implying, that the complaint is sufficient in other respects.

Perhaps the second ground of demurrer is not sufficiently specific in its statements. It does not clearly show what additional party ought to have been made defendant.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

BIDDLE, J.—The counsel for the appellant has filed a petition for rehearing, in which he uses language unprofessional and disrespectful. The following are two sentences quoted from his petition:

"We doubt if there is a man in the State, no matter how common his understanding, if he is not an absolute idiot, who would fail to understand, at once, from the language in the complaint, that the trustee had the earnings of the road in his possession or under his control.

"It may be a pleasant thing for the courts to thus play shuttle-cock with a man's rights, but it is not much amusement for those who have the expenses to pay."

We know nothing of the counsel, except his name, signed to the petition: nor would it make the slightest difference if we did, for it is not a personal question, but one concerning the professional relation of a lawyer, to the official duty of a court. Before a court, every lawyer stands upon the same level of equal and exact right, and

must submit to the same standard of equal and exact duty; and we acknowledge, as resting upon ourselves, the onerous obligation and solemn duty imposed by a sacred oath—by which we are required to write down every official word we say, and every official act we do, and lay them before a learned and honorable profession, and which must be printed, and published to the world—to do equal and exact justice, to all men, under the laws and the constitution. It would, therefore, ill become us to swerve from this obligation, or abandon this duty, on account of the unfortunate temper of counsel.

If the counsel, in this case, when the court below so properly held the complaint insufficient, had amended it,—which would have cost but a few cents, and not an hour's delay,—his client would have gained his rights in the case, if he has any, long ago; but instead of following that plain duty and business-like course, his counsel, either through ignorance or stubbornness,—for it must have been one or the other—brought his case to this court, upon an insufficient complaint, and because we, as in duty bound, affirm the decision below, he talks flippantly of the courts playing shuttle-cock with man's rights, at the expense of the parties. It is very evident that his client has suffered needless expense and needless delay,—not by the fault of the court below, nor of this court, but,—by the error of his counsel; and we think there needs to be no severer rebuke to the counsel than a statement of his own conduct.

In the relation between this court and the profession, we do not expect to hear any such language again.

The petition for a rehearing is overruled.